### UNITED STATES of America

v.

### Oscar Herman RAMIREZ–CALDERONE,
### Defendant.

### No. 3:CR:92–165/02.

United States District Court,
M.D. Pennsylvania.

Nov. 25, 1992.

---

foreman answered affirmatively. Thereafter, the jury was polled and each member affirmed the verdict.

Oscar Herman Ramirez–Calderone, pro se.

John C. Gurganus, Jr., Asst. U.S. Atty., Scranton, PA, for U.S.

## MEMORANDUM AND ORDER

NEALON, District Judge.

On September 4, 1992, after a three day trial, a jury convicted defendant, Oscar Herman Ramirez Calderone, on three counts, *viz.,* (1) conspiracy to possess with intent to deliver in excess of one kilogram of cocaine, 21 U.S.C. § 846; (2) aiding and abetting Juan Dela Pena in possession with intent to distribute in excess of one kilogram of cocaine, 21 U.S.C. §§ 841(a)(1); 841(b)(1)(B) and 18 U.S.C. § 2; and (3) possession of cocaine, 21 U.S.C. § 844(a). De-

fendant has filed a motion in arrest of judgment; Fed.R.Crim.P. 34 and/or for a new trial, Fed.R.Crim.P. 33, contending that (a) the court erred in allowing evidence of his prior involvement with cocaine; (b) he was not tried by a jury of his peers; and (c) the case should have been transferred to another venue. For the reasons that follow, the motion will be denied.

### I.

At the outset it is noted that the evidence against defendant was more than sufficient to satisfy the reasonable doubt standard on all counts. He accompanied a codefendant, and his brother-in-law, Juan Dela Pena, to Scranton on two occasions when Dela Pena delivered a kilo of cocaine to a co-conspirator, James Schaeffer. Dela Pena testified that defendant was aware of the purpose of the trips from New York to the Scranton area; actually removed some of the cocaine enroute for his personal use; and participated in a diversionary effort to avoid detection by registering in a motel for a few hours because of fear of a hot pursuit by law enforcement officers. Additionally, at the time of his arrest, which occurred in the vicinity of the second delivery, defendant had a small quantity of cocaine secreted in a folded dollar bill in his wallet, as well as a digital display paging device on his belt which is regularly used in drug transactions to maintain communication with customers. Other evidence at the trial included defendant's prior inconsistent statements, an admission by the defendant that he accompanied Dela Pena on a prior trip (which he claimed was for purchasing used cars), and the disputed evidence concerning prior drug participation.

### II.

■ Evidence was admitted of prior drug dealings and usage by defendant for the limited purpose of showing a previous relationship of defendant with another co-conspirator, James Schaeffer, plus background, familiarity with drug transactions, scheme, knowledge and intent. *See* Fed. R.Evid. 404(b). In pretrial proceedings, including a hearing on a motion to suppress,

defendant described himself as an unknowing and innocent companion on the two trips from New York to Scranton. He maintained that he was told that the purpose of the journey was to look for used cars for Dela Pena's used car business. The alleged diversionary tactic of registering in a motel while the pursuit subsided was described by defendant as for another purpose, specifically in preparation for an appearance the following day in Monroe County Court on an unrelated matter. Moreover, during his post arrest interview with investigating officers, defendant professed innocence based upon the same factual assertions.

In anticipation of this defense, which was also outlined by defense counsel in his opening to the jury prior to the taking of any testimony, the government offered the testimony of James Schaeffer, an admitted co-conspirator, who stated that he has known defendant and Dela Pena for 2½ to 3 years having formerly worked with them at a Pocono resort. He testified that he purchased 3½ grams of cocaine from defendant on two occasions in 1990 at the resort [1]. Dino Brocca testified that he arranged to buy a small amount of cocaine through defendant who set up a meeting with the supplier. According to Brocca, the transaction occurred in defendants' jeep and defendant acted as a translator between him and the supplier.

■ Evidence of other crimes or acts is admissible under Rule 404(b) for purposes such as motive, opportunity, intent and knowledge. The rule was intended to be one of "inclusion" rather than "exclusion", so that its admissibility for additional purposes including essential background information, a continuing relationship between co-conspirators and the defendant, parties' familiarity with one another, etc., has been recognized and approved by our Court of Appeals. *U.S. v. Scarfo,* 850 F.2d 1015, 1019 (3rd Cir.1988). In a conspiracy context, background evidence, parties' famil-

iarity with one another and their concert of action are admissible under Rule 404(b). *U.S. v. Traitz,* 871 F.2d 368, 389 (3rd Cir. 1989). *See also U.S. v. McGlory,* 968 F.2d 309 (3rd Cir.1992). In the present case, the court made findings of relevancy and that the probative value of the evidence was not outweighed by the danger of unfair prejudice. Finally, the jury was properly instructed as to the limited purpose for the admission of this evidence and no objection was made as to the explanation to the jury of the limitation.

### III.

■ Defendant's remaining two contentions will be treated together as they are related. In essence, defendant asserts that because there is a scarcity of Spanish speaking hispanics in this vicinage, the case should have been transferred to another district where the jury array would reflect a more proportionate hispanic influence. Defendant did not challenge the manner in which the jury panel was chosen under the Jury Selection and Service Act, 28 U.S.C. § 1861, *et seq.* Nor did he question the actual jury selection in this case. His complaint is stated in conclusory terms but appears to argue that he is constitutionally entitled to a jury which includes Spanish-speaking hispanics. There is no such constitutional requirement. A defendant is not entitled to demand jurors of a particular race or class. *See Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). A trial should be held, absent compelling reasons, in the district where the alleged offense occurred. The fact that there are few persons of a defendant's origin does not preclude trial in that district. "[I]t is clear that a criminal defendant in a federal court has no right to an individual panel represented by any particular racial, social, or economic group." *U.S. v. Fernandez,* 480 F.2d 726, 733 (2nd Cir.1973). Defendant does not contend that there was a deliberate exclusion of a particular group from jury service or that

---

**1.** Elaine Rainbow, defendant's fiance, testified on his behalf and denied that he had ever used cocaine in her presence. To impeach her testimony, the prosecution in rebuttal called Gerry Streeper who challenged her testimony by relating several instances when he observed defendant using cocaine.

the jury selected did not represent a fair cross-section of the district. Accordingly, this argument will be rejected.

## IV.

After careful consideration of the motion, and the arguments submitted thereon, the court is satisfied that the motion is without merit and, therefore, will be denied.